UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIONYSIANNA A.,[1]

    Plaintiff,

v.

FRANK BISIGNANO,
*Commissioner of Social Security*,[2]

    Defendant.

Case No. 22-cv-3335-MJS

## MEMORANDUM OPINION

Through this case, Plaintiff Dionysianna A. ("Ms. A") seeks review of the Social Security Administration's ("SSA") denial of her application for supplemental social security and disability insurance benefits. Ms. A's claim to benefits is premised on several physical and mental impairments, including one known as Neuromyelitis Optica Spectrum Disorder ("NMO" or "NMOSD"). Ms. A asserts that the Administrative Law Judge ("ALJ") improperly discounted her NMO at various stages of the analysis, including by wrongly brushing aside the opinion of her neurologist, Dr. Ruwani Gunawardane. On at least this last point, the Court agrees. Accordingly, the Court **GRANTS** Ms. A's motion for judgment of reversal (ECF No. 21), **DENIES** the Commissioner's cross-motion for judgment of affirmance (ECF No. 22), and **REMANDS** this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Plaintiff's name has been partially redacted in keeping with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Privacy Concern Regarding Social Security and Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (encouraging the use of "only the first name and last initial" in Social Security cases).

[2] The current Commissioner is automatically substituted as the named defendant. Fed. R. Civ. P. 25(d).

1

## BACKGROUND

**I.    Factual Overview**

Ms. A was 31 years old when she applied for benefits on January 11, 2018. (ECF No. 16, Administrative Record ("AR") at 296–308.)[3] In her application, Ms. A originally presented the following disabling impairments: seasonal affective disorder, panic disorder without agoraphobia, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. (*Id.* at 461.)

As Ms. A's benefits application wound its way through the administrative process, she experienced further health issues, including a 2019 transient ischemic attack ("TIA")—sometimes referred to as a ministroke.[4] For some time, Ms. A's doctors suspected she may be suffering from multiple sclerosis (*see* AR at 2719, 2937, 3065), but after further testing in 2021, Dr. Gunawardane diagnosed Ms. A with NMO, "a progressive neurological disorder" (*see id.* at 21, 3306). Another specialist, Dr. Robert Shin, subsequently acknowledged that NMO diagnosis. (*Id.* at 3367, 3520.) As the parties describe it, NMO is a "relapsing, remitting degenerative disease that attacks and damages the nervous system and optic nerves." (ECF No. 21 ("Pl.'s Mem.") at 7.)[5] For Ms. A, this long-elusive diagnosis explained the symptoms she had been experiencing for many years, including an earlier TIA in 2012. (*Id.* at 46, 3305, 3271.) Ms. A described the related symptoms as like "razorblades in your veins," with unpredictable flareups that last at least three to four days and prevent her from performing routine daily activities. (*Id.* at 57–59, 73.)

---

[3] Page citations to the AR refer to the running pagination at the lower right margin. Page citations to the parties' briefing, by contrast, refer to the ones assigned by the Court's electronic filing system.

[4] "A transient ischemic attack (TIA) is a short period of symptoms similar to those of a stroke." *Transient ischemic attack (TIA)*, Mayo Clinic (Feb. 9, 2024), https://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/symptoms-causes/syc-20355679.

[5] NMO "is a central nervous system disorder that causes inflammation in nerves of the eye and the spinal cord" and is "often misdiagnosed as multiple sclerosis." *Neuromyelitis optica*, Mayo Clinic (Dec. 13, 2024), https://www.mayoclinic.org/diseases-conditions/neuromyelitis-optica/symptoms-causes/syc-20375652.

## II.     The ALJ's Decision

To qualify for benefits under the Social Security Act, a claimant must demonstrate a disability that renders her unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(a)(1), 1382c(a)(3)(A). The SSA implements these statutory standards through a five-step sequential evaluation process for determining disability. *See* 20 C.F.R. §§ 404.1520(a) (articulating five-step analysis for disability insurance benefits) & 416.920(a) (same for supplemental social security). Through that five-step process, an ALJ evaluates whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) could return to past relevant work; and (5) if not, could perform any other work in the national economy. *See, e.g.*, *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (describing each step). At the first four steps, the claimant bears the burden of proof. *Id.* At step five, the burden shifts and requires the Commissioner to show that a claimant can perform "other work" available in the national economy "based on a consideration of her 'residual functional capacity' (RFC), age, education and past work experience." *Id.*

The ALJ employed this five-step process here. (AR at 17–31.) At step one, the ALJ found Ms. A had not engaged in substantial gainful activity since the application date. (*Id.* at 19–20 (finding her self-employment after the application to not be substantially gainful).) At step two, the ALJ determined that Ms. A had several severe impairments—specifically, generalized anxiety disorder, major depressive disorder, panic disorder with episodic paroxysmal anxiety, and PTSD— that limited her ability to perform basic work activities. (*Id.* at 20.) Relevant here, the ALJ found

3

that Ms. A's NMO did not qualify as "severe" because there was "no evidence that [she] had ongoing functional limitations" for a twelve-month period. (*Id.* at 21–22 (citations omitted).)

At step three, the ALJ considered three regulatory listings: Listing 12.04 (depressive, bipolar, and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), and Listing 12.15 (trauma- and stressor-related disorders). (*Id.* at 22.) The ALJ found that Ms. A did not have any impairment or combination of impairments that met or medically equaled the relevant criteria. The ALJ did not analyze—or even refer to—Listing 11.17 (neurodegenerative disorders of the central nervous system), which could be applicable to a disorder like NMO.

From there, before moving to step four, the ALJ assessed Ms. A's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(e), 416.920(e), which captures the most "an individual can do despite … her limitations," Social Security Ruling 96–8p, 1996 WL 374184, at *1. The ALJ determined that Ms. A had the RFC to perform sedentary work with various limitations. (AR at 24.) At step four, the ALJ determined that Ms. A was unable to perform past relevant work. (*Id.* at 29.) And at step five—in reliance on a vocational expert's testimony, and in view of Ms. A's RFC, age, education, and work experience—the ALJ concluded that Ms. A could perform jobs that exist in significant numbers in the national economy. (*Id.* at 30–31.) Based on the five-step analysis, then, the ALJ ruled that Ms. A was not "disabled" as defined by the Act and denied her application for benefits. (*Id.* at 31.)

Relevant to this appeal, the ALJ mentioned—but did not afford any meaningful consideration or weight to—the opinion of Ms. A's neurologist, Dr. Gunawardane. The surrounding discussion was limited to few sentences toward the end of the ALJ's decision:

> Finally, the undersigned considered the letter from the claimant's treating neurologist, Ruwani Gunawardane …. Dr. Gunawardane indicated the claimant was diagnosed with a progressive neurological disorder, NMOSD[,] in April 2021. Dr. Gunawardane further mentioned that as a result of the combined effects of the

4

>claimant's cognitive dysfunction, severe fatigue and other symptoms, the claimant is "permanently disabled" and unable to engage in competitive employment. However, the undersigned has not [been] provided any analysis regarding the assertion the claimant is "permanently disabled" and would be unable to engage in employment, as statements regarding issues of whether a claimant is disabled or the ability to perform regular work are reserved for the Commissioner …. Moreover, these types of statements are inherently neither valuable nor persuasive and therefore, this decision cannot provide any analysis on how such evidence was considered evidence[.]

(AR at 29 (citing AR at 3372).)

### III. Procedural History

Ms. A.'s application was denied at both the initial and reconsideration levels. (AR at 145, 149, 154, 158.) During the administrative hearing on July 19, 2021, Ms. A appeared with counsel, and the ALJ heard testimony from Ms. A and a vocational expert. (*See id.* at 39–98.) On August 20, 2021, the ALJ issued a decision finding Ms. A not disabled. (*Id.* at 17–31.) On August 26, 2022, the Appeals Council denied Ms. A's request for review, making the ALJ's decision final. (*Id.* at 1.)

At that juncture, pursuant to 42 U.S.C. § 405(g), Ms. A timely sought judicial review, asking this Court to reverse the ALJ's decision and remand for reconsideration. The Commissioner filed a cross-motion to affirm the decision below. The dueling motions are ripe for decision.

## LEGAL STANDARD

"The Commissioner's 'ultimate determination' about entitlement to benefits 'will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards.'" *Cox v. Kijakazi*, 77 F.4th 983, 990 (D.C. Cir. 2023) (quoting *Butler*, 353 F.3d at 999). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations and quotation marks omitted); *see also Butler*, 353 F.3d at 999 (describing substantial evidence as "more than a scintilla, but … less than a preponderance"). The Court must "carefully

5

scrutinize" the record for substantial evidence, but it may not reweigh the evidence itself, *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 32 (D.D.C. 2014) (quotation marks omitted), as judicial review in this context is "highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). That said, when an ALJ denies benefits, they must build an "accurate and logical bridge" from the evidence to their conclusions so the Court can assess whether a connection exists between the evidence and the ALJ's conclusions. *Lane–Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). In carrying out that assessment, the Court must focus on the rationale articulated by the ALJ, not on any *post hoc* rationalization the Commissioner may offer on appeal. *Jones v. Astrue*, 647 F.3d 350, 356–57 (D.C. Cir. 2011); *Williams v. Colvin*, 134 F. Supp. 3d 358, 364 (D.D.C. 2015) ("[T]he Commissioner's attempt to build a logical bridge post hoc is insufficient.").

## DISCUSSION

Ms. A challenges the ALJ's decision on four separate grounds. She argues that the ALJ erred by: (1) declining to find her NMO qualified as a "severe" impairment; (2) not analyzing the potential applicability of Listing 11.17; (3) disregarding Dr. Gunawardane's medical opinion concerning her NMO diagnosis; and (4) relying on allegedly inconsistent testimony from the vocational expert concerning her work capacity. (Pl.'s Mem. at 6–7.) Because Ms. A's third challenge bears on all the others, at least in some sense, the Court begins its analysis there.

I.   **The ALJ Improperly Disregarded Dr. Gunawardane's Opinion**

In assessing claims of disability, the governing regulations require that an ALJ consider various categories of evidence. 20 C.F.R. §§ 404.1513, 416.913. One category requiring special attention is a medical opinion, *i.e.*, "a statement from a medical source about what [a claimant] can

still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). These limitations include a claimant's "ability to perform" both the physical and mental "demands of work activities." 20 C.F.R. §§ 404.1513(a)(2)(i)–(ii), 416.913(a)(2)(i)(A)–(B).

For claims like Ms. A's that were filed after March 2017, an ALJ must assess a medical opinion's persuasiveness against five overall factors: (1) "supportability," (2) "consistency," (3) "relationship with the claimant" (as defined by several subfactors), (4) "specialization," and (5) still "other factors." 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). Of these, "supportability" and "consistency" are the "most important," *id.* §§ 404.1520c(b)(2), 416.920c(b)(2), and an ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," *De Deaux v. Kijakazi*, 2022 WL 14760678 at *3 (D.D.C. Oct. 25, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). "Supportability" considers how well "objective medical evidence" supports an opinion, while "consistency" assesses how consistent the opinion "is with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). Said differently, the "supportability factor is an internal check that references objective medical evidence and supporting explanations that come from the source itself," and "the consistency factor is an external check that references evidence from other medical and nonmedical sources." *Tracey L. v. King*, 2025 WL 1276804, at *4 (D.D.C. Jan. 23, 2025) (citation and quotation omitted). Although "there is no specific format required for addressing supportability and consistency," an ALJ must provide a "sufficient explanation for a reviewing court to determine that the ALJ analyzed those factors." *David W. v. Kijakazi*, 2023 WL 5035935, at *11 (D.D.C. Aug. 8, 2023).

In support of her claim for benefits, Ms. A relied in part on a June 2021 letter from Dr. Gunawardane. (AR at 3372.) The letter stated that Ms. A had recently been diagnosed with NMO and opened by explaining that Ms. A "is disabled from this chronic progressive neurological disorder." (*Id.*) The letter repeated the terms "disabled" or "disabling" a couple more times and closed by describing Ms. A as "permanently disabled." (*Id.*) Amid those bookended statements of disability, though, the letter fleshed out additional specifics, including the following symptoms and observations: "intermittent left sided weakness and numbness/tingling in her left hand and leg"; "an intermittent tremor L>R"; "vision loss, paresthesia[], hyperesthesia, incoordination, limb weakness, ataxia, loss of balance and vertigo"; "she finds it difficult to walk without falling, her vision gets blurred … that causes her to have limitations in all activities such as reading and writing and driving"; "she has painful sensation in the skin in arms and legs … and 'blood vessels feel[] as if there are spikes'"; "she is most times unable to engage in any activities for more than 15-30 minutes due to severe nerve pain"; "cognitive dysfunction with severe fatigue," including "problems concentrating[,] focusing[,] slowing down of working speed," and more. (*Id.*)[6]

In denying Ms. A's claim for benefits, the ALJ mentioned Dr. Gunawardane's letter but then quickly dismissed any reliance on it. In the ALJ's view, Dr. Gunawardane's letter was improper because it stated that Ms. A was "permanently disabled," which is tantamount to a conclusion on the ultimate legal issue reserved to the Commissioner. (AR at 29 (citing AR at 3372).) The ALJ was correct that this sort of conclusory statement on the ultimate issue of disability is "neither valuable nor persuasive" under the applicable regulations. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3); *see also Kyler v. Berryhill*, 2017 WL 10241530, at *11 (D.D.C.

---

[6] The Court observes that Dr. Gunawardane's letter includes its fair share of grammatical errors, misspellings, missing punctuation, and other formatting mistakes. The Court recognizes there can be a tendency to discount the value of submissions along these lines. But for purposes of its analysis here, the Court is focused on the letter's substantive content rather than its presentation or formatting.

8

Dec. 19, 2017) (explaining that "a conclusory opinion on the ultimate issue of disability … is entitled to little weight"). But as plenty of courts have explained, an "opinion on the ultimate issue does not mean that the rest of the [document] and its specific assessments could be ignored." *Merritt W. v. Comm'r*, 2021 WL 3052094, at *3 n.5 (W.D.N.Y. July 20, 2021) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *see also Louise D. v. O'Malley*, 2024 WL 1478075, at *10 (D. Conn. Feb. 29, 2024) ("[W]hile the ALJ was not required to give controlling effect to [the doctor's] opinion on the ultimate issue of disability, he was not entitled to discount the rest of the opinion merely because it contained a few sentences in which the doctor went beyond his ken.") (citations omitted); *Carpenter v. Astrue*, 2011 WL 3951623, at *6 (D. Vt. Sept. 7, 2011) ("An ALJ cannot … without further explanation, simply reject all evidence from a treating physician because one component of the treating physician's opinions is unsupported and conclusory."). In other words, even if Dr. Gunawardane may have colored a bit outside the lines in describing Ms. A as "disabled," that was not a license for the ALJ to ignore the rest of her statements out of hand.

After all, Dr. Gunawardane's letter offered much more than a bald and conclusory label that Ms. A was "disabled" or "permanently disabled." Dr. Gunawardane described the symptoms Ms. A experienced as a result of her NMO—including left-sided weakness, tremor, vision loss, nerve pain, and more—along with various limitations caused by those symptoms—including that Ms. A was "unable to engage in any activities for more than 15- 30 minutes due to severe nerve pain" and that "she needs to take frequent naps throughout the day every 4-6 hours," at least during her NMO-related flare ups. (*See* AR at 3372.) These facets of Dr. Gunawardane's letter reflect that its contents can be fairly characterized as a "medical opinion" under the applicable regulations, *i.e.*, "statement[s] from a medical source about" Ms. A's "impairment-related limitations." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). As a result, it was error for the ALJ to simply brush aside

9

Dr. Gunawardane's evidence without at least analyzing the persuasiveness of the statements in her letter based on the supportability and consistency factors described above.

The Commissioner resists this takeaway for two reasons. First, echoing the ALJ, the Commissioner focuses on the fact that Dr. Gunawardane's letter characterized Ms. A as "disabled" in a handful of places and argues that the "letter in this regard was not probative or persuasive." (ECF No. 22 at 19.) That proposition is true as far as it goes, but for the reasons just explained, it does not justify the ALJ's broader decision to ignore the balance of Dr. Gunawardane's letter.

Second, the Commissioner says the rest of the letter did not qualify as a medical opinion because it simply restated Ms. A's own subjective complaints, rather than setting forth Dr. Gunawardane's own medical observations and findings. (ECF No. 22 at 19–20.) On this point, the caselaw does recognize that "an ALJ may find a medical opinion unsupported and therefore unpersuasive 'if it appears to be based on the patient's subjective allegations.'" *Wonzell C. v. O'Malley*, 2024 WL 3738819, at *15 (D.D.C. May 8, 2024) (quoting *Ephrain S. v. Berryhill*, 355 F. Supp. 3d 738, 746 (N.D. Ill. 2019)), *report and recommendation adopted*, 2024 WL 3288070 (D.D.C. July 3, 2024); *see also, e.g.*, *Fischer v. Saul*, 2020 WL 1479306, at *13 (E.D. Wis. Mar. 26, 2020) ("[A]n ALJ is permitted to consider the extent to which a treating physician's limitations are based on the claimant's subjective reports rather than objective findings."). But the main problem with that argument here is that the ALJ's decision never articulated that reason in minimizing the value of Dr. Gunawardane's letter. Fairly read, the ALJ's treatment of the letter hinged solely on the rationale summarized already—*i.e.*, that Dr. Gunawardane opined on the ultimate issue of disability. Nothing more. The Commissioner cannot permissibly expand the ALJ's reasoning through additional, *post hoc* rationale. *See De Deaux*, 2022 WL 14760678, at *5 (similarly rejecting *post-hoc* arguments where the ALJ "never identified either of the[]

10

explanations as justifications for discounting [a medical provider's] letter"); *see also Espinoza v. Colvin*, 953 F. Supp. 2d 25, 32–33 (D.D.C. 2013). Separately, as Ms. A points out (ECF No. 24 at 12–13), Dr. Gunawardane's letter seemingly does more than regurgitate Ms. A's subjective descriptions of her own symptoms and complaints. The letter appears to include medical findings and describes various limitations resulting from Ms. A's impairment(s). (AR at 3227.)[7] And along those same lines, the administrative record included other medical evidence from Dr. Gunawardane beyond the letter that the ALJ briefly addressed—namely, treatment notes from several visits, which themselves reference various MRI scans and other screening results. (AR at 3341, 3279, 3322, 3300, 3305, 3363.) That additional evidence may shed light on the persuasiveness of Dr. Gunawardane's June 2021 letter. The ALJ should consider that additional evidence, as appropriate, on remand.

In sum, on the record presented, the ALJ's rejection of Dr. Gunawardane's letter was improper, and remand is warranted on this basis. On remand, the ALJ should fully and properly address Dr. Gunawardane's submissions for persuasiveness, including based on the supportability and consistency factors prescribed by the regulations.

## II. Ms. A's Remaining Arguments Are Best Left for Remand

As previewed, Ms. A advances three other arguments for remand, each focused on a different step of the requisite analysis. But because those arguments all implicate how the ALJ dealt with Ms. A's NMO diagnosis and related symptoms, and because Dr. Gunawardane's medical evidence bears heavily on those issues, the Court believes it better to leave the remaining points

---

[7] Even setting aside that, in minimizing the value of Dr. Gunawardane's letter, the ALJ did not invoke any subjective-complaint rationale, this additional point seems to distinguish the two cases cited by the Commissioner. *See Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) ("Much of what [plaintiff] labels 'medical opinion' was no more than a doctor's recording of [plaintiff's] own reports of pain."); *McMorris v. Comm'r of Soc. Sec.*, 2019 WL 2897123, at *5 (W.D.N.Y. June 26, 2019) (rejecting argument that plaintiff's recorded statement to therapist, captured in treatment session notes, was a "medical opinion").

11

for the ALJ to address in the first instance on remand after revisiting the persuasiveness of Dr. Gunawardane's opinion in keeping with the analysis set forth above.

Take Ms. A's argument for remand at step two. She claims the ALJ erred in finding that her NMO did not qualify as a "severe" impairment. (Pl.'s Mem. at 14–17.) Dr. Gunawardane's opinion and related medical evidence may bear meaningfully on that threshold issue, depending on how the ALJ reassesses that aspect of the record on remand. The same holds true for Ms. A's step-three argument that the ALJ wrongly failed to assess whether her NMO satisfies the criteria for Listing 11.17. (*Id.* at 17–20.) Again, depending on how the ALJ reevaluates Dr. Gunawardane's evidence, the ALJ might take a different view of how the relevant criteria for that listing might apply here. Finally, Ms. A's step-five argument aimed at the ALJ's use of the vocational expert testimony— *i.e.*, that the ALJ failed to consider the expert's reported acknowledgement that some of the impairment-related limitations identified by Dr. Gunawardane would be work-preclusive—may similarly hinge on the ALJ's reassessment of Dr. Gunawardane's opinion.

All told, the Court believes these issues are best left for the ALJ to reconsider in the first instance on remand, after properly addressing Dr. Gunawardane's letter and related evidence.

## CONCLUSION

For these reasons, the Court **GRANTS** Ms. A's motion (ECF No. 21) and **DENIES** the Commissioner's motion (ECF No. 22). The matter will be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further review consistent with the analysis above. The Court will issue a separate order so stating.

Dated: January 21, 2026

                                        MATTHEW J. SHARBAUGH
                                        United States Magistrate Judge